**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cr-20188-RUIZ**

**UNITED STATES OF AMERICA**

**v.**

**BRANDON SARTOR,**

**Defendant.**
_______________________________________/

**STIPULATED FACTUAL PROFFER**

The United States of America and BRANDON SARTOR (hereinafter referred to as the "defendant"), hereby agree that, had this case proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt:

**The Offenses**

1. **Count 1:** From on or about December 2024, to on or about April 2025, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant, BRANDON SARTOR, did knowingly, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport, provide, obtain, and maintain by any means a person, that is, Victim 1, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, and any combination of such means, would be used to cause Victim 1 to engage in a commercial sex act, in violation of Title 18, United States Code, Section 1591(a)(1) and (b)(1).

2. **Count 2:** From on or about January 2025 to on or about April 2025, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant, BRANDON SARTOR, did knowingly, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport,

provide, obtain, and maintain by any means a person, that is, Victim 2, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, and any combination of such means, would be used to cause Victim 2 to engage in a commercial sex act, in violation of Title 18, United States Code, Section 1591(a)(1) and (b)(1).

**The Offense Conduct**

**Victim 1 (Count 1)**

3. In or around December 2024, Victim 1 met the defendant when the defendant responded to an advertisement Victim 1 had posted. Victim 1 talked to the defendant over Facetime and then met him the next day. The defendant promised Victim 1 she could make a lot of money if she started working for him performing commercial sex acts. Based on those promises, Victim 1 began working for the defendant performing commercial sex acts.

4. Beginning in December 2024, and continuing through April 2025, Victim 1 performed commercial sex acts for the defendant's financial benefit in and around Baltimore, Maryland; Wilmington, Delaware; Philadelphia, Pennsylvania; Myrtle Beach, South Carolina; Atlanta, Georgia; Orlando, Florida; and Miami, Florida. The defendant kept all the money Victim 1 made from the commercial sex dates she performed. The defendant paid various expenses for Victim 1, including hotels, hair appointments, and nail appointments.

5. On a "low" day, Victim 1 would perform one commercial sex date for the defendant's benefit. On a "high" day, Victim 1 would perform ten commercial sex dates for the defendant's benefit. Victim 1 performed these commercial sex dates in hotels or at the customer's home. The defendant directed her to charge $160 for a "short stay," $260 for half an hour, and $400 for a full hour. The defendant would drive Victim 1 to commercial sex dates, or she would

take an Uber paid for by the customer or the defendant. Some of these dates took place in Miami-Dade County, in the Southern District of Florida

6. At the defendant's behest, Victim 1 used her cell phone to post commercial sex advertisements on various online platforms. Some of these advertisements were posted in Miami-Dade County, in the Southern District of Florida.

7. The defendant consistently communicated with Victim 1 and provided her instructions regarding commercial sex acts. The defendant also messaged Victim 1 during various commercial sex transactions using his cell phone. The defendant also communicated directly with sex buyers using his cell phone to arrange commercial sex transactions for Victim 1.

8. The defendant hit Victim 1 with his hands and fists on a regular basis when he got upset with her. He also called her names and threatened to harm Victim 1's sister, who was pregnant at the time.

9. The defendant controlled Victim 1 by taking her cell phone at times, limiting her communication with others, and providing her with drugs (marijuana and pills).

10. On more than one occasion, the defendant stole firearms and/or money from a customer purchasing commercial sex acts from Victim 1, and Victim 1 observed the defendant engaged in these acts.

11. Victim 1 observed the defendant physically assault Victim 2 on at least two occasions.

12. Victim 1 observed the defendant with multiple firearms during the period she performed commercial sex dates for his benefit.

**Victim 2 (Count 2)**

13. In or around January 2025, Victim 2 met the defendant in the hallway of a hotel. The defendant asked Victim 2 if she wanted to "get high" with him and supplied her with drugs (cocaine and heroin). The defendant told Victim 2 he had a lot of money and was making a lot of money in the commercial sex industry.

14. Shortly thereafter, the defendant began instructing Victim 2 to engage in commercial sex acts for his financial benefit. Beginning in January 2025 and continuing through March 2025, Victim 2 performed commercial sex acts for the defendant in Myrtle Beach, South Carolina; Atlanta, Georgia; and Miami, Florida.

15. At times, the defendant transported Victim 2 to and from commercial sex dates in hotels and homes in Georgia and Florida. On other occasions, the defendant instructed Victim 2 to take Uber or Lyft rides to commercial sex dates, which were paid for by the defendant or the customer. At times, the defendant instructed Victim 1 to accompany Victim 2 to commercial sex dates because Victim 2 was high on drugs and only weighed approximately ninety pounds.

16. Victim 2 made approximately $1,000 per day performing commercial sex acts, and the defendant took all the money she made.

17. The defendant instructed Victim 1 to post commercial sex advertisements on various online platforms for Victim 2 and posted some commercial sex advertisements of Victim 2 himself. Some of these advertisements were posted in Miami-Dade County, in the Southern District of Florida. The defendant set the prices for these commercial sex acts.

18. The defendant consistently communicated with Victim 2 and provided her instructions regarding commercial sex acts. The defendant also messaged Victim 2 during various

commercial sex transactions using his cell phone. The defendant also communicated directly with sex buyers using his cell phone to arrange commercial sex transactions for Victim 2.

19. The defendant instructed Victim 2 to give all the money she earned on these commercial sex dates to him, and she complied.

20. During the time Victim 2 was performing commercial sex dates for the defendant, the defendant provided her with heroin and cocaine. When Victim 2 could not use heroin or cocaine, she got "dope sick" and experienced severe withdrawal symptoms – at times requiring hospitalization. To stop the withdrawal symptoms, Victim 2 completed additional commercial sex dates to obtain the drugs from the defendant.

21. The defendant was physically and sexually violent with Victim 2 on multiple occasions. On one occasion, the defendant sexually assaulted Victim 2 when she was unconscious. On another, he physically and then sexually assaulted her in a parking garage, giving her a black eye and telling her, "I'm going to punish you with my dick," because she was not getting enough calls in response to her commercial sex advertisements.

22. Victim 2 observed the defendant become physically violent with Victim 1 on more than one occasion.

23. Victim 2 observed the defendant with firearms during the period she performed commercial sex dates for his benefit.

24. The defendant threatened to kill or injure Victim 2's cats.

25. On more than one occasion, the defendant stole firearms and/or money from a customer purchasing commercial sex acts from Victim 2, and Victim 2 observed the defendant engaged in these acts.

26. The parties agree that these facts, which do not include all the facts known to the

government and the defendant, are sufficient to prove that: (i) the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, and maintained Victims 1 and 2; (ii) the defendant did so knowing or in reckless disregard of the fact that means of force, threats of force, fraud or coercion or any combination of such means would be used to cause Victims 1 and 2 to engage in commercial sex; and (iii) that the defendant's acts were in or affected interstate or foreign commerce, in violation of Title 18, United States Code, Section 1591(a)(1) and (b)(1).

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

SO STIPULATED by the parties and their legal counsel.

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

Date: 8/27/2026 By: ______________________

DWAYNE EDWARD WILLIAMS
ASSISTANT UNITED STATES ATTORNEY

A. TYSEN DUVA
ASSISTANT ATTORNEY GENERAL
U.S. DEPARTMENT OF JUSTICE,
CRIMINAL DIVISON

Date: 8/27/26 By: ______________________

ELIZABETH A. HUTSON
TRIAL ATTORNEY
U.S. DEPARTMENT OF JUSTICE
HUMAN RIGHTS AND SPECIAL
PROSECUTIONS SECTION

HECTOR A. DOPICO
FEDERAL PUBLIC DEFENDER

Date: 8/27/26 By: ______________________

CHRISTIAN DUNHAM
ASSISTANT FEDERAL PUBLIC DEFENDER

Date: 8/27/26 By: ______________________

BRANDON SARTOR
DEFENDANT